IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

AMANDA M. SMITH,          )
                                   )
          Plaintiff,        )
                                   )
          v.                )        Civil No. SAG-18-0381
                                   )
COMMISSIONER,         )
SOCIAL SECURITY,      )        (GALLAGHER, M.J.)
                                   )
          Defendant.      )        **[FILED VIA ECF]**

---

PLAINTIFF'S BRIEF IN SUPPORT OF
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Patrick J. Best, Esq.
18 N. 8th St.
Stroudsburg PA 18360
570-424-6899

July 6, 2018

# TABLE OF CONTENTS

I.   STATEMENT OF THE CASE ……………………………………….......... 3

II.   SUMMARY OF MEDICAL EVIDENCE …………………………….……… 5

III.   ARGUMENTS …………….……………………………………….…………… 10

    1.  The ALJ erroneously attributed the opinion of Dr. Shabash to
       Dr. Glanville; the ALJ erroneously evaluated opinion evidence of record;
       the ALJ failed to properly weigh the opinion of Dr. Shabash ……….…..… 10

    2.  The ALJ erroneously rejected the opinion of Ms. Smith's treating
       psychologist; the ALJ substituted his opinion for that of a medical one..... 12

    3.  The ALJ erroneously failed to include a limitation regarding interactions
       with supervisors in Ms. Smith's residual functional capacity assessment
       despite the limitation being contained in Dr. Eyler's opinion which was
       given "great weight" by the ALJ. ……………………………………….. 15

    4.  The residual functional capacity assessment is not supported by
       substantial evidence as a limitation to unskilled work does not
       sufficiently account for Ms. Smith's moderate limitations in
       concentration, persistence, or pace………………………………………….. 17

    5.  The ALJ erred as a matter of law by failing to give substantial weight to
       the VA's 90% disability rating …………………………………………… 19

IV.   CONCLUSION………………………………………………………………. 23

## I.    STATEMENT OF THE CASE

This case is an appeal under 42 U.S.C. § 405(g) of a final administrative decision of Defendant, the Commissioner of Social Security ("Commissioner"), which denied Plaintiff, Amanda M. Smith ("Ms. Smith"), Disability Insurance Benefits (DIB) under Title II of the Social Security Act. On January 10, 2014, she was initially denied by the State Agency. (Tr. 138). Plaintiff subsequently requested reconsideration which was denied on July 21, 2014. (Tr. 145). Plaintiff requested an administrative hearing on October 7, 2014. (Tr. 147). Following, an administrative hearing was held before an Administrative Law Judge ("ALJ") on May 12, 2016. (Tr. 58-93). Subsequently, the ALJ assigned to the case was unable to issue a decision and the case was re-assigned. (Tr. 33). A second administrative hearing was then scheduled for August 2, 2017. (Tr. 31-56). On September 12, 2017, the ALJ used the well-known five-step sequential evaluation to decide that the Plaintiff was not disabled. (Tr. 10-30) 20 C.F.R. § 404.1520 (sequential evaluation).[1]

At step one, the ALJ found that Ms. Smith had not engaged in substantial gainful activity since May 15, 2013, her alleged onset date. (Tr. 15). 20 C.F.R. § 404.1520(b) (step one).

At step two, the ALJ determined that Ms. Smith had, as "severe" impairments, osteoarthritis, degenerative disc disease of the lumbar spine, and post-traumatic stress disorder ("PTSD"). (Tr. 15). 20 C.F.R. § 404.1520(c) (step two).

---

[1] Before undertaking the sequential evaluation in this case, the ALJ noted that Ms. Smith's insured status had not expired. (Tr. 15).  (Therefore, her insured status was not at issue.)

At step three, the ALJ concluded that Ms. Smith did not have an impairment(s) or combination of impairment(s) that met or equaled a Listed impairment. (Tr. 16). 20 C.F.R. § 404.1520(d) (step three).

After step three but before step four, the ALJ made a residual functional capacity assessment, i.e., a determination of the most that Ms. Smith could do despite the total limiting effects of all her impairments. (Tr. 17). 20 C.F.R. § 404.1545 (defining "residual functional capacity"). From these impairments, the ALJ assessed that the Plaintiff could perform a range of light work with additional limitations. She can only occasionally climb ladders, ropes, and scaffolds. She can occasionally balance, stoop, kneel, crouch, and crawl. She can have occasional exposure to extreme cold, extreme heat, wetness, humidity, vibration, fumes, odors, dust, gas, poor ventilation, and hazards. She can perform simple, unskilled tasks, with no fast pace or strict production requirements, and occasional interaction with co-workers and the public. (Tr. 17). See 20 C.F.R. § 404.1567(b) (defining "light" work).

At step four, the ALJ determined that Ms. Smith was unable to perform her past relevant work. (Tr. 23). 20 C.F.R. §404.1520(f) (step four).

The ALJ thus reached step five. (Tr. 23). 20 C.F.R. § 404.1520(g) (step five). At that, the last step, the ALJ relied on Medical-Vocational Guidelines (Grid) Rule 202.21 as a "framework" and the Vocational Expert's testimony to decide that Ms. Smith was not disabled. (Tr. 24). 20 C.F.R. pt. 404, subpt. P, app. 2, tbl 2. Rule 202.21.

According to the ALJ, Ms. Smith could perform the occupations of electronics worker (DOT # 726.687-010), small parts assembler (DOT # 706.684-022), and shipping and receiving weigher (DOT # 222.387-074). (Tr. 24).

On December 14, 2017, the ALJ's decision became the Commissioner's final decision subject to judicial review when the Appeals Council denied Ms. Smith's request for review. (Tr. 1-5). 20 C.F.R. § 422.210(a). Ms. Smith then initiated this civil action. 42 U.S.C. § 405(g).

Substantial evidence is the standard of review. 42 U.S.C. § 405(g); See also Mascio v. Colvin, 780 F.3d 632, 636–37 (4th Cir. 2015). Substantial evidence is more than a mere scintilla; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 522, 564-65 (1988).


## II.    SUMMARY OF MEDICAL EVIDENCE

Ms. Smith suffers from both physical and mental impairments including osteoarthritis, degenerative disc disease of the lumbar spine, and PTSD. (Tr. 15). Plaintiff will address the physical impairments separately from the mental impairments below.

### A.  Mental Impairments

Ms. Smith was a civilian employee of the military. (Tr. 303). She became fearful and felt intimidated at work due to violence, threats, intimidation, and verbal abuse. (Tr. 303). She was sexually abused by her sergeant. (Tr. 312). She left work because of a panic attack. (Tr. 303). Dr. Melanie Mendoza advised her to take off work due to her inability to focus and her difficulty coping with work situations which leads to worsening

anxiety level. (Tr. 353). She was then evaluated by Upper Bay Counseling and Support Services ("Upper Bay"). (Tr. 310). Her Global Assessment of Functioning ("GAF") score was 50.[2]

Ms. Smith was examined by Dr. Bhalavat on June 19, 2013. (Tr. 314). Dr. Bhalavat specifically noted that her concentration was poor. (Tr. 314). She was frequently crying, was sad and depressed, and had poor eye contact. (Tr. 315). Her speech was slow. (Tr. 315). Attention and concentration were only fair. (Tr. 315). Her Global Assessment of Functioning ("GAF") score was 35-40.[3]

On June 24, 2013, Ms. Smith received a diagnostic review from Upper Bay in which she was diagnosed with adjustment disorder, panic disorder, and anxiety. (Tr. 296).

On July 12, 19, and 26, 2013, Ms. Smith was interviewed by Stephanie L. Glanville, Psy. D. (Tr. 326). She was noted as having a history of panic disorder and PTSD. (Tr. 323). She has problems with attention and concentration which made it difficult for her to learn her job. (Tr. 323). Dr. Glanville administered three psychological tests: the Beck Anxiety Inventory ("BAI"), the Beck Depression Inventory ("BDI-II"), and the Posttraumatic Stress Disorder Checklist ("PCL"). (Tr. 325). On the BAI, Ms. Smith's anxiety was in the severe range. (Tr. 325). On the BDI-II, Ms. Smith's depression was in the severe range. (Tr. 325). Her PCL suggested a diagnosis of PTSD. (Tr. 325). On mental status examination, difficulty with attention and concentration was evident

---

[2] A GAF of 41-50 represents serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job, cannot work). DSM-IV-TR, p. 34.
[3] A GAF of 31-40 represents some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed adult avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school).). DSM-IV-TR, p. 34.

throughout the assessment. (Tr. 325). She had difficulty staying on one topic long enough to complete a thought, she asked Dr. Glanville to repeat information multiple times, and often asked Dr. Glanville to help her identify a point she was attempting to make. (Tr. 325-326). Her GAF was 45. (Tr. 326).

On August 5, 2013, Dr. Levi Breuer, Psy. D. conducted a psychological evaluation. (Tr. 328). On examination, her affect was labile. (Tr. 331). She appeared anxious and depressed. (Tr. 331). Her anxiety was manifested in nervous movements of her hands and in her speech. (Tr. 331). She reported a lack of concentration. (Tr. 331). Dr. Breuer diagnosed her with panic disorder, major depressive disorder, and anxiety disorder. (Tr. 334).

On February 28, 2014, Dr. Shabash provided a medical source statement. (Tr. 359). At that time, Dr. Shabash was treating Ms. Smith monthly for approximately one year. (Tr. 359). Dr. Shabash noted Ms. Smith's GAF as 40 with the highest GAF in the past year as 43. (Tr. 359). Her prognosis was guarded. (Tr. 359). She is not a malingerer. (Tr. 359). Dr. Shabash also provided a medical opinion regarding Ms. Smith's functional limitations which include, but are not limited to, the following. She would have marked limitations in the ability to sustain an ordinary routine without special supervision. (Tr. 360). She would have extreme limitations in the ability to work in coordination with or proximity to others without being distracted by them and in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number of rest periods. (Tr. 360). In terms of limitations in social interactions, she would have extreme limitations in the ability to interact appropriately

with the general public, to accept instructions and respond appropriately to criticism from supervisors, and in the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. (Tr. 360). In terms of limitations in adaptation, Ms. Smith would have marked limitations in the ability to respond appropriately to changes in the work setting. (Tr. 360). She would have extreme limitations in the ability to maintain attention and concentration for extended periods and to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances. (Tr. 361). Ms. Smith's impairments would substantially interfere with her ability to work on a regular and sustained basis for at least 20% of the time. (Tr. 362).

On the same day, Dr. Glanville submitted a medical source statement. (Tr. 363). Dr. Glanville treated Ms. Smith on a weekly basis for approximately one year. (Tr. 363). Dr. Glanville noted a GAF of 45 with that being the highest GAF in the last year. (Tr. 363). Her prognosis was guarded. (Tr. 363). She is not a malingerer. (Tr. 363). Dr. Glanville then provided her opinion regarding Ms. Smith's limitations including, but not limited to, the following. (Tr. 364). She would have marked limitations in the ability to maintain attention and concentration for extended periods. (Tr. 364). She would have extreme limitations in the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances. (Tr. 364). She would also have marked limitations in the ability to sustain an ordinary routine without special supervision and extreme limitations in the ability to work in coordination with or proximity to others without being distracted by them. (Tr. 365). She would have extreme limitations in the ability to complete a normal workday and workweek without

interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number of and length of rest periods. (Tr. 365). In terms of limitations in social interaction, she would have extreme limitations in the ability to interact appropriately with the general public, ability to accept instructions and respond appropriately to criticism from supervisors, and the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. (Tr. 365). Her impairments would substantially interfere with her ability to work on a regular and sustained basis at least 20% of the time. (Tr. 366). Additionally, Dr. Glanville noted that Ms. Smith's treatment requires six days per month and would therefore need miss work at least six days per month. (Tr. 366).

Dr. Glanville provided a series of psychological testing in May of 2014. (Tr. 571). Her BAI results indicate anxiety in the severe range. (Tr. 571). Her BDI-II results indicate depression in the severe range. (Tr. 572). Her PCL again suggested a diagnosis of PTSD. (Tr. 572).

On June 12, 2014, Victoria Eyler, Psy.D. examined Ms. Smith at the request of the state agency. (Tr. 551). On examination, Ms. Smith was unable to correctly complete serial 7s or to correctly repeat a short phrase. (Tr. 554). She made one error when following a three-step command. (Tr. 554). As a result of the examination, Dr. Eyler opined that Ms. Smith's symptoms would moderately interfere with her ability to maintain attendance in the work place, complete a normal work week, and handle inter personal conflict with co-workers and supervisors. (Tr. 554).

She continued to treat with Dr. Glanville through 2016 and enrolled in the Caregiver Support program. (Tr. 935).

### B. Physical Impairments

In addition to her mental impairments, Ms. Smith also has several physical impairments. These include paralysis of the median nerve, traumatic arthritis, inflammation of external popliteal nerve, and synovitis. (Tr. 444).

In 2014, her episodic back pain increased to daily. (Tr. 472). She was diagnosed with bilateral sciatic radiculopathy. (Tr. 472). She was experiencing wrist pains and numbness of the fingers due to bilateral median neuropathy. (Tr. 473). Her hands, fingers, fee, and toes had decreased sensation to light touch. (Tr. 475-476). Phalen's sign and Tinel's sign were positive. (Tr. 476).

Imaging confirmed degenerative changes in the lumbar spine and lower thoracic spine degenerative disease. (Tr. 513-514).

The ALJ found the "severe" impairments of osteoarthritis and degenerative disc disease of the lumbar spine. (Tr. 15)

### III.   ARGUMENTS

**1.  The ALJ erroneously attributed the opinion of Dr. Shabash to Dr. Glanville; the ALJ erroneously evaluated opinion evidence of record; the ALJ failed to properly weigh the opinion of Dr. Shabash.**

The ALJ's residual functional capacity assessment, hypothetical question(s) to the vocational expert, and step five findings cannot be supported by substantial evidence as the ALJ erroneously evaluated the opinion evidence of record. Namely, the ALJ erroneously attributed the opinion of Dr. Shabash to Dr. Glanville.

In evaluating the opinion evidence of record, the ALJ discusses "multiple letters" by Dr. Shabash which recommended time off work. (Tr. 22). In doing so, the ALJ cited

Exhibit 14F, p. 105-109 which is page 684 of the administrative record. (Tr. 22, 684). The ALJ rejected this opinion as it is an issue reserved to the Commissioner. (Tr. 22).

However, the ALJ failed to discuss the medical source statement of Dr. Shabash at Exhibit 8F (Tr. 359) which contained opinions on specific functional limitations. (Tr. 22). (Tr. 22). Rather, the ALJ seemingly attributes this opinion at Exhibit 8F (Tr. 359) to Dr. Glanville. (Tr. 22). To that end, when discussing Dr. Glanville's opinion, the ALJ refers to opinions at Exhibits 8F and 9F. (Tr. 22) ("Dr. Glanville states the claimant is not capable of competitive employment at the present time (Exhibits 8F and 9F)"). The ALJ makes no mention of the fact that Exhibit 8F is actually an opinion from Dr. Shabash – *not* Dr. Glanville. (Tr. 22). The ALJ then afforded "little weight" to these opinions as Dr. Glanville's evaluation findings do not support the assessment of marked or extreme limitations. (Tr. 22).

As the ALJ did not appreciate that Exhibit 8F (Tr. 359) was the opinion of Dr. Shabash, it cannot be said that the ALJ properly evaluated the opinion pursuant to 20 C.F.R. § 404.1527. Moreover, this would call into question the analysis of Dr. Glanville's opinion at Exhibit 9F (Tr. 367). Because the ALJ did not realize that two separate treating sources opined similarly, the ALJ did not fully and fairly evaluate the opinion evidence of record. The ALJ could not have reasonably considered the "consistency" or "supportability" of these opinions as required by 20 C.F.R. § 404.1527(c) because the ALJ did not realize that the opinions were from two separate treating sources.

Remand is required for the ALJ to properly analyze the opinion evidence of record.

**2. The ALJ erroneously rejected the opinion of Ms. Smith's treating psychologist; the ALJ substituted his opinion for that of a medical one.**

As set forth above, the ALJ improperly imputed the opinion of Dr. Shabash to Dr. Glanville. Remand is required on that basis. Moreover, because the ALJ did not properly analyze the opinion of Dr. Shabash, it cannot be said that the ALJ's basis for rejecting the opinion of Dr. Shabash is supported by substantial evidence. However, in addition to the erroneous analysis of Dr. Shabash's opinion, the ALJ erroneously rejected the opinion of Dr. Glanville. Remand is required on this basis as well.

The ALJ "must…adopt" any medical opinion entitled to controlling weight. SSR 96-5p. The Regulations afford special deference to treating sources ("treating source rule"). The ALJ must assign controlling weight to any well-supported treating source medical opinion unless the ALJ identifies substantial inconsistent evidence. See 20 C.F.R. §404.1527(c)(2). The regulation's treating physician rule accords the greatest weight — controlling weight — to the opinions of treating sources, because those "sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations." Brown v. Comm. of Soc. Sec., 873 F. 3d 251, 268 (4th Cir. 2017).

Dr. Glanville is an acceptable medical source. 20 C.F.R. §404.1527(a). She is a treating source because she treated Plaintiff "a number of times and long enough to have obtained a longitudinal picture of [Plaintiff's] impairment[s]." 20 C.F.R. § 404.1527(c)(2). The statements of Dr. Glanville are medical opinions "on the issue(s) of the nature and severity of [Plaintiff's] impairment(s)," and not statements on an issue

reserved to the Commissioner. 20 C.F.R. §404.1527(c)(2). Thus, the ALJ must assign the opinion controlling weight if it is well-supported and not inconsistent with other substantial evidence. Id.

### A.  Well-supported

The treating source opinion must be well-supported. See 20 C.F.R. §404.1527(c)(2). Indeed, the opinion of Dr. Glanville are well-supported. Dr. Glanville was able to incorporate her own observations as well as objective psychological testing. In terms of observations, Dr. Glanville noted that in their meetings, Ms. Smith had difficulty staying on one topic long enough to complete a thought, she asked Dr. Glanville to repeat information multiple times, and often asked Dr. Glanville to help her identify a point she was attempting to make. (Tr. 325-326). Additionally, Dr. Glanville noted evident difficulty with attention and concentration throughout the assessment. (Tr. 325). In terms of psychological testing, three separate tests revealed severe psychological limitations. (Tr. 325). On the BAI, Ms. Smith's anxiety was in the severe range. (Tr. 325). On the BDI-II, Ms. Smith's depression was in the severe range. (Tr. 325). Her PCL suggested a diagnosis of PTSD. (Tr. 325). Thus, the opinion is well-supported.

### B.  Substantial Inconsistent Evidence

The ALJ must assign controlling weight to any well-supported treating source medical opinion unless the ALJ identifies substantial inconsistent evidence. See 20 C.F.R. §404.1527(c)(2). Here, the ALJ did not identify any substantial evidence inconsistent with the opinion of Dr. Glanville.

The ALJ afforded "some weight" to the opinion, but ultimately concluded that her examination findings do not support the assessment of marked or extreme limitations.

(Tr. 22). The ALJ further concluded that the mental status exams recorded were essentially within normal limits. (Tr. 22). Neither of these bases establish substantial inconsistent evidence.

As to the evaluation findings, the ALJ provides no explanation – and thus, no legally sufficient explanation – as to how the evaluation findings do not support marked or extreme limitations. The ALJ simply concludes that the "evaluation findings" do not support marked or extreme limitations. The ALJ does not specify which examination findings. This is particularly problematic when Dr. Glanville set forth evaluation findings which *do* support marked and extreme limitations. (Tr. 325-326). Thus, the only possible justification for the ALJ's crediting a non-examining state agency physician over Ms. Smith's treating sources is that the non-examining source's opinion lined up most closely with the view of the record espoused by the ALJ in rendering his adverse credibility finding against Ms. Smith. Compare, e.g., Brown v. Comm'r. of Soc. Sec., 873 F.3d 251, 269 (4th Cir. 2017).

Thus, the ALJ did not cite substantial inconsistent evidence sufficient to afford less than controlling weight to the opinion of Dr. Glanville. Remand is required.

## C. Deference

Assuming *arguendo* the Court were to conclude that Dr. Glanville's opinion (and Dr. Shabash's opinion for that matter) was "inconsistent" in some regard, SSR 96-2p directs that such an inconsistency is not sufficient to reject the opinion. SSR 96-2p provides that a well-supported treating source medical opinion need not be supported directly by all of the other evidence (i.e., it does not have to be consistent with all the other evidence) as long as there is no other substantial evidence in the case record that

contradicts or conflicts with the opinion. The preference for the treating physician's opinion has been recognized by the Court of Appeals for the Fourth Circuit and by all of the federal circuits. See, e.g., Brown, 873 F.3d 251.

Thus, when considering the evidence of record in this case, the ALJ's medical opinion analysis cannot be supported by substantial evidence. Remand is required.

**3. The ALJ erroneously failed to include a limitation regarding interactions with supervisors in Ms. Smith's residual functional capacity assessment despite the limitation being contained in Dr. Eyler's opinion which was given "great weight" by the ALJ.**

The ALJ's residual functional capacity assessment, hypothetical question(s) to the vocational evidence, and step five findings, cannot be supported by substantial evidence as the ALJ failed to include a limitation regarding interaction with supervisors in the residual functional capacity assessment despite its inclusion in Dr. Eyler's opinion which the ALJ afforded "great weight" and found to be consistent with and supported by the record. Moreover, the ALJ failed to explicitly reject this limitation or discuss why such a limitation would be rejected.

As set forth above, Dr. Eyler opined that Ms. Smith's symptoms would moderately interfere with her ability to handle inter personal conflict with co-workers and supervisors. (Tr. 554). The ALJ gave this opinion "great weight" and found it "supported by the consultative examination findings" and "consistent with the evidence of record". (Tr. 22).

Despite crediting Dr. Eyler's opinion, affording the opinion "great weight", and finding Ms. Smith to have moderate limitations in "interacting with others" (Tr. 16), the ALJ failed to include any limitation in the residual functional capacity assessment related to Ms. Smith's ability to handle inter personal conflict with supervisors. (Tr. 17).

Here, the ALJ neither adopted this opinion of Dr. Eyler nor did the ALJ explain his failure to adopt this portion of the opinion which he concluded was consistent with and supported by the record. There is no explanation – and thus, no legally sufficient explanation – as to how an opinion which was given "great weight" and was well supported and generally consistent with the evidence as a whole would not be wholly incorporated into the residual functional capacity assessment.

In other words, because the ALJ concluded that the opinion was consistent with and supported by the record, the additional limitation regarding interactions with supervisors was also inherently determined to be consistent with and supported by the record. Thus, here, Plaintiff and the Court are "left to guess about how the ALJ arrived at his conclusions on [Plaintiff's] ability to perform relevant functions" vis-à-vis a failure to include a limitation in interactions with supervisors. See Mascio v. Colvin, 780 F. 3d 632, 637 (4th Cir. 2015).

In response to this argument, the Commissioner typically argues that an ALJ is not required to adopt any medical opinion. Should the Commissioner so argue here, the Commissioner will miss the point. Plaintiff is not arguing that the ALJ is required to adopt any medical opinion. Rather, Plaintiff is arguing that when an ALJ gives an opinion "great weight" and finds it to be supported by and consistent with the record, the ALJ must either properly incorporate the opinion into the residual functional capacity assessment or – at a minimum - explain his failure to do so.  See, e.g., Fox v. Colvin, 632 Fed.Appx. 750 (4th Cir. December 17, 2015); Smith v. Heckler, 782 F.2d 1176, 1181 (4th Cir. 1986) (explaining that the ALJ needs to filter through the evidence and explain "why" the ALJ made the decision); Hammond v. Heckler, 765 F.2d 424, 426 (4th

Cir. 1985) (per curiam) (stating that an ALJ has a "duty of explanation" of what informed his decision); see also Hines v. Colvin, Civ. A. No. 3:14-CV-2139 (Pa. M.D. December 9, 2015)(remanding when the ALJ gave "great weight" to a medical opinion and indicated it to be consistent with the record yet failed to include all relevant limitations from the opinion and failed to provide an explanation for these omissions). Without such an explanation, Plaintiff and the Court are "left to guess about how the ALJ arrived at his conclusions on [Plaintiff's] ability to perform relevant functions." See Mascio, 780 F.3d at 637. Remand is required.

**4. The residual functional capacity assessment is not supported by substantial evidence as a limitation to unskilled tasks does not sufficiently account for Ms. Smith's moderate limitations in concentration, persistence, or pace.**

Plaintiff has established above that the ALJ's residual functional capacity assessment, hypothetical question(s) to the vocational expert, and step five findings cannot be supported by substantial evidence because the ALJ failed to properly evaluate opinion evidence of record. See Arguments 1, 2, 3, supra. However, there is a separate, yet related basis for remand. The ALJ did not properly account for Ms. Smith's moderate difficulties in the area of concentration, persistence, or pace within the residual functional capacity assessment. (Tr. 17).

Indeed, the only mental limitation purportedly related to moderate limitations in concentration, persistence, or pace which was afforded Ms. Smith was a limitation to simple, unskilled tasks. (Tr. 17). However, the Fourth Circuit has found that "an ALJ does not account "for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work." Mascio, 780 F. 3d. at 638 (citing Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180 (11th

Cir. 2011)(joining the Third, Seventh, and Eighth Circuits). The ALJ failed to include any limitations pertaining to Ms. Smith's inability to stay on task. <u>Mascio</u>, 780 F. 3d at 638 ("[T]he ability to perform simple tasks differs from the ability to stay on task. Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace.").

Indeed, the record is replete with evidence of Ms. Smith's inability to stay on task:

- On mental status examination, difficulty with attention and concentration was evident throughout the assessment. (Tr. 325). She had difficulty staying on one topic long enough to complete a thought, she asked Dr. Glanville to repeat information multiple times, and often asked Dr. Glanville to help her identify a point she was attempting to make. (Tr. 325-326).

- Dr. Shabash opined that she would have extreme limitations in the ability to maintain attention and concentration for extended periods and to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances. (Tr. 361). Her impairments would substantially interfere with her ability to work on a regular and sustained basis for at least 20% of the time. (Tr. 362).

- Dr. Glanville opined that she would have marked limitations in the ability to maintain attention and concentration for extended periods. (Tr. 364). Her impairments would substantially interfere with her ability to work on a regular and sustained basis at least 20% of the time. (Tr. 366).

- Dr. Eyler noted an inability to correctly complete serial 7s or to correctly repeat a short phrase and she made one error when following a three-step command. (Tr. 554).

Thus, it is clear that Ms. Smith's limitations in concentration, persistence, or pace would not only restrict her to simple, unskilled tasks, but would also require a limitation regarding her inability to stay on task.

The vocational expert testimony evidences that this error is not harmless. The vocational expert testified that if a person were off-task for 15% of the day, that person would not be capable of sustaining employment. (Tr. 53). Thus, if the ALJ properly incorporated a limitation that Ms. Smith were off-task as the result of her difficulties maintaining concentration for extended periods, she would not be capable of sustaining employment.   Remand is required for the ALJ to properly account for all relevant limitations within the residual functional capacity assessment and hypothetical questions to the vocational expert. Mascio, 780 F. 3d at 638 (finding harm when the ALJ failed to properly account for Plaintiff's moderate limitations in concentration, persistence, or pace in the hypothetical question(s) to the vocational expert).

**5. The ALJ erred as a matter of law by failing to give substantial weight to the VA's 90% disability rating.**

Ms. Smith was assessed a 90% disability rating through the Department of Veterans Affairs ("VA"). (Tr. 367). The ALJ erred as a matter of law by failing to give substantial weight to this rating.

While the ALJ purported to consider all relevant VA evidence, the ALJ gave "little weight" to the 90% disability rating "as the standards utilized for other types of disability claims differ from the standards imposed by Social Security statutes, regulations, and

rules." (Tr. 22-23). That is the ALJ's only basis for affording "little weight" to the opinion. As such reasoning has been rejected by the Fourth Circuit Court of Appeals, the ALJ's failure to afford substantial weight to the VA disability rating is reversable error.

The ALJ's cursory analysis runs afoul of the Fourth Circuit's decision in <u>Bird v. Commissioner of Social Security Administration</u>, 699 F.3d 337 (4th Cir.2012) in two respects: (1) <u>Bird</u> holds that "a VA disability determination must be accorded substantial weight in Social Security disability proceedings." <u>Bird</u>, 699 F.3d at 345. Pursuant to <u>Bird</u>, ALJs may deviate from the substantial weight standard only "if the particular facts of the case warrant." <u>Id.</u> The ALJ here failed to cite any specific evidence to justify a departure from the <u>Bird</u> standard; and (2) the ALJ's reliance on alleged general differences between a Social Security disability determination and a VA disability determination runs counter to <u>Bird</u>, which recognized the substantial similarity between Social Security cases and VA cases. <u>Bird</u>, 699 F.3d at 343 ("Because the purpose and evaluation methodology of both programs are closely related, a disability rating by one of the two agencies is highly relevant to the disability determination of the other agency.").

The ALJ's analysis of the VA rating in this case consists of one sentence which concludes only that "the standards utilized for other types of disability claims differ from the standards imposed by Social Security statutes, regulations, and rules." (Tr. 22-23) In <u>Bird</u>, the Fourth Circuit addressed for the "weight that the SSA [Social Security Administration] must afford to a VA disability rating." <u>Bird</u>, 699 F.3d at 343. The court observed the similarities between the evaluation of disability by the VA and the SSA:

[B]oth the VA and Social Security programs serve the same governmental purpose of providing benefits to persons unable to work because of a serious disability. Both programs evaluate a claimant's ability to perform full-time work in the national economy on a sustained and continuing basis; both focus on analyzing a claimant's functional limitations; and both require claimants to present extensive medical documentation in support of their claims.

Id. (internal quotations and citations omitted).

After reviewing the "varying degrees of evidentiary significance" other circuits afford VA disability ratings, the Fourth Circuit held as follows:

The VA rating decision reached in [the plaintiff's] case resulted from an evaluation of the same condition and the same underlying evidence that was relevant to the decision facing the SSA. Like the VA, the SSA was required to undertake a comprehensive evaluation of [the plaintiff's] medical condition. Because the purpose and evaluation methodology of both programs are closely related, a disability rating by one of the two agencies is highly relevant to the disability determination of the other agency. Thus, we hold that, in making a disability determination, the SSA must give substantial weight to a VA disability rating. However, because the SSA employs its own standards for evaluating a claimant's alleged disability, and because the effective date of coverage for a claimant's disability under the two programs likely will vary, an ALJ may give less weight to a VA disability rating when the record before the ALJ clearly demonstrates that such a deviation is appropriate.

Id. (emphasis added).

Thus, the ALJ's decision cannot be supported by substantial evidence for two reasons. First, the ALJ's finding that the VA disability rating was deserving of only "little weight" due to the differences in the programs disregards Bird's holding to the contrary that, "[b]ecause the purpose and evaluation methodology of both programs are closely related, a disability rating by one of the two agencies is highly relevant to the disability determination of the other agency." Bird, 699 F.3d at 343 (emphasis added). The ALJ's rejection of the disability ratings constitutes a particularly erroneous finding where, as in Bird, "[t]he VA rating decision[s] reached in [the plaintiff's] case resulted from an evaluation of the same condition and the same underlying evidence that was relevant to

the decision facing the SSA." Id. (emphasis added). In fact, Plaintiff's treatment records from the VA constitute a great deal of the medical evidence in the record.

Second, the ALJ failed to identify any grounds (let alone grounds that would amount to a clear demonstration under Bird) for affording the VA ratings less than substantial weight.

Plaintiff is aware that in response to this argument, the Commissioner ordinarily argues that a rejection of VA disability ratings can be "appropriate". See, e.g., Mills v. Colvin, No. 5:13–CV–432–FL, 2014 WL 4055818, at *7–*9 (E.D.N.C. Aug. 14, 2014) (unpublished). However, cases such as Mills are distinguishable. In Mills, the ALJ expressly acknowledged the Bird decision, Mills, 2014 WL 4055818, at *9 ("The undersigned is mindful of the [Fourth Circuit's] recent holding that a VA disability determination must be accorded 'substantial weight' in Social Security disability proceedings,"), and carefully explained why deviation from Bird's substantial weight standard was warranted under the facts of that case.

An ALJ must "explicitly detail the reasons for giving [a VA disability determination] less weight." Thomas v. Colvin, Action No. 4:12CV179, 2013 WL 5962929, at *9 (E.D.Va. Nov. 6, 2013). Further, citing to "different rules and different standards" as a rationale to give less than substantial weight to a VA disability determination is not enough, because such a rationale would apply to every case, and thus cannot clearly demonstrate a reason for departing from the Bird presumption. Id; see also Hildreth v. Colvin, Civ. A. No. 1:14-cv-660, 2015 WL 5577430 at *4 (M.D.N.C. 2015). Here, as in Thomas and Hildreth, the ALJ merely noted that the standards of the

two programs were different. (Tr. 22-23.) As such, substantial evidence cannot support the ALJ's denial of benefits.

In sum, the ALJ reversibly erred by dismissing outright Plaintiff's VA disability ratings and by failing to adequately explain how the record "clearly demonstrates" that said ratings merit less than "substantial weight." Bird, 699 F.3d at 343. "On remand, the [SSA] should directly address [the weight attributable to] Plaintiff's VA disability rating[s] in light of the Fourth Circuit's decision in Bird, ... and [should] clearly identify the record evidence that supports any deviation from [the substantial weight] standard." Wilson v. Colvin, No. 1:11CV256, 2014 WL 4274253, at *6 (M.D.N.C. Aug. 29, 2014).

## IV.    CONCLUSION

It is therefore respectfully requested that this Honorable Court grant a reversal in this case, thereby making her eligible to receive Disability Benefits. In the alternative, Plaintiff requests remand with instructions to: (1) assess the opinion of Dr. Shabash in the first instance; (2) reassess the opinion of Dr. Glanville and its effect on residual functional capacity; (3) reassess the opinion of Dr. Eyler and its effect on residual functional capacity; (4) properly consider the effects of Ms. Smith's moderate limitations in concentration, persistence, or pace on her residual functional capacity; (5) properly afford substantial weight to Ms. Smith's 90% VA disability rating; (6) reassess Ms. Smith's residual functional capacity; and, (6) issue a new decision based on substantial evidence and proper legal standards.

Dated: July 6, 2018                         Respectfully submitted,
                                            s/ Patrick J. Best, Esq.
                                            Patrick J. Best
                                            18 N. 8th St.
                                            Stroudsburg PA 18360
                                            570-424-6899