IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

| | |
|---|---|
| AMANDA M. SMITH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. CBD-18-0381 |
| | ) |
| NANCY A. BERRYHILL, | ) |
| | ) |
| Acting Commissioner, | ) |
| Social Security Administration | ) |
| | ) |
| Defendant. | ) |
| | ) |

## MEMORANDUM OPINION

Amanda M. Smith ("Plaintiff") brought this action under 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner"). The Commissioner denied Plaintiff's claim for a period of Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. Before the Court are Plaintiff's Motion for Summary Judgment ("Plaintiff's Motion") (ECF No. 18) and Commissioner's Motion for Summary Judgment ("Commissioner's Motion") (ECF No. 19). The Court has reviewed the motions, related memoranda, and the applicable law. No hearing is deemed necessary. *See* Local Rule 105.6 (D. Md.). For the reasons presented below, the Court hereby **DENIES** Plaintiff's Motion, **DENIES** Commissioner's Motion, and **REVERSES** and **REMANDS** this matter for further proceedings consistent with this opinion. A separate order will issue.

## I. Procedural Background

On November 8, 2013, Plaintiff filed for DIB under Title II. R. 13, 111, 123. Plaintiff alleged disability beginning May 15, 2013. R. 13, 111, 123. Plaintiff alleged disability due to depression, anxiety disorder with panic attacks, panic disorder, stressor induced disorder, PTSD, and migraines. R. 36, 39, 49, 111, 123. Plaintiff's claim was initially denied on January 10, 2014, and upon reconsideration on July 21, 2014. R. 13, 111-21, 123-36, 138-41, 145-46. On October 7, 2014, Plaintiff requested an administrative hearing. R. 13, 147-48. A hearing was originally held on May 12, 2016. R. 33, 58-93. However, due to the unavailability of that presiding-Administrative Law Judge ("ALJ"), a second hearing was held on August 2, 2017. R. 13, 33. On September 15, 2017, Plaintiff's claim was denied by the ALJ who conducted the second hearing. R. 13. Plaintiff sought review by the Appeals Council, which concluded on December 14, 2017, that there was no basis for granting the Request for Review. R. 1-3, 200-01.

## II. Standard of Review

On appeal, the Court has the power to affirm, modify, or reverse the decision of the ALJ "with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g) (2015). The Court must affirm the ALJ's decision if it is supported by substantial evidence and the ALJ applied the correct law. *Id.* ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."); *see also Russell v. Comm'r of Soc. Sec.*, 440 F. App'x 163, 164 (4th Cir. 2011) (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)). "In other words, if the ALJ has done his or her job correctly and supported the decision reached with substantial evidence, this Court cannot overturn the decision, even if it would have reached a contrary result on the same evidence." *Schoofield v. Barnhart*, 220 F. Supp. 2d 512, 515 (D. Md. 2002). Substantial evidence is

"more than a mere scintilla." *Russell*, 440 F. App'x, at 164. "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see also Hays*, 907 F.2d at 1456 (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)) (internal quotation marks omitted) ("It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence.").

The Court does not review the evidence presented below *de novo*, nor does the Court "determine the weight of the evidence" or "substitute its judgment for that of the Secretary if his decision is supported by substantial evidence." *Hays*, 907 F.2d at 1456 (citations omitted); *see also Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972) ("[T]he language of § 205(g) precludes a *de novo* judicial proceeding and requires that the court uphold the Secretary's decision even should the court disagree with such decision as long as it is supported by 'substantial evidence.'"). The ALJ, not the Court, has the responsibility to make findings of fact and resolve evidentiary conflicts. *Hays*, 907 F.2d, at 1456 (citations omitted). If the ALJ's factual finding, however, "was reached by means of an improper standard or misapplication of the law," then that finding is not binding on the Court. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987) (citations omitted).

The Commissioner shall find a person legally disabled under Title II if she is unable "to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a) (2012). The

Code of Federal Regulations outlines a five-step process that the Commissioner must follow to determine if a claimant meets this definition:

1) Determine whether the plaintiff is "doing substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i) (2012). If she is doing such activity, she is not disabled. If she is not doing such activity, proceed to step two.

2) Determine whether the plaintiff has a "severe medically determinable physical or mental impairment that meets the duration requirement in § [404.1509], or a combination of impairments that is severe and meets the duration requirement." 20 C.F.R. § 404.1520(a)(4)(ii) (2012). If she does not have such impairment or combination of impairments, she is not disabled. If she does meet these requirements, proceed to step three.

3) Determine whether the plaintiff has an impairment that "meets or equals one of [the C.F.R.'s] listings in appendix 1 of this subpart and meets the duration requirement." 20 C.F.R. § 404.1520(a)(4)(iii) (2012). If she does have such impairment, she is disabled. If she does not, proceed to step four.

4) Determine whether the plaintiff retains the "residual functional capacity" ("RFC") to perform "past relevant work." 20 C.F.R. § 404.1520(a)(4)(iv) (2012). If she can perform such work, she is not disabled. If she cannot, proceed to step five.

5) Determine whether the plaintiff can perform other work, considering her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v) (2012). If she can perform other work, she is not disabled. If she cannot, she is disabled.

Plaintiff has the burden to prove that she is disabled at steps one through four, and Commissioner has the burden to prove that Plaintiff is not disabled at step five. *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992).

The RFC is an assessment that represents the most a claimant can still do despite any physical and mental limitations on a "regular and continuing basis." 20 C.F.R. § 404.1545(b)-(c). In making this assessment, the ALJ must consider all relevant evidence of the claimant's impairments and any related symptoms. *See* 20 C.F.R. § 404.1545(a). The ALJ must present a "narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g. laboratory findings) and nonmedical evidence (e.g. daily activities,

observations)," and must then "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." SSR 96-8p, 1996 WL 374184 at *7 (S.S.A.). "Ultimately, it is the duty of the [ALJ] reviewing the case, and not the responsibility of the courts, to make findings of fact and to resolve conflicts of evidence." *Hays*, 907 F.2d at 1456 (citing *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)).

**III.     Analysis**

In this matter, the ALJ evaluated Plaintiff's claim using the five-step sequential evaluation process. R. 13-24. At step one, the ALJ determined that Plaintiff did not engage in substantial gainful activity since May 15, 2013, the alleged onset date. R. 15. At step two, under 20 C.F.R. § 404.1520(c), the ALJ determined that Plaintiff had the following severe impairments: "osteoarthritis; degenerative disc disease of the lumbar spine; and post-traumatic stress disorder (PTSD)." R. 15. The ALJ stated that the listed impairments were severe because they, "significantly limit the ability to perform basic work activities . . . ." R. 15. In step three, the ALJ determined that Plaintiff did not have "an impairment or a combination of impairments that [met] or medically equal[ed] the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526)." R. 16. At step four, the ALJ determined that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(a) except that:

> [Plaintiff] can occasionally climb ramps, stairs, ladders, ropes, and scaffolds; she can occasionally balance, stoop, kneel, crouch, and crawl; she can have occasional exposure to extreme cold, extreme heat, wetness, humidity, vibration, fumes, odors, dust, gas, poor ventilation, and hazards; and she can perform simple, unskilled tasks, with no fast pace or strict production requirements, and occasional interaction with co-workers and the public.

5

R. 17.  The ALJ then determined that Plaintiff was not capable of performing any of her past relevant work.  R. 23.  At step five, however, the ALJ concluded that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform."  R. 23.

On appeal, Plaintiff requests that the Court grant summary judgment in her favor or, in the alternative, remand this matter to the Social Security Administration ("SSA") for a new administrative hearing.  For the reasons set forth below, the Court **REVERSES** the ALJ's decision in part and **REMANDS** the matter for further proceedings.

### A. *The ALJ erred in his assessment of the weight to afford Plaintiff's VA disability rating.*

Plaintiff argues that the ALJ erred as a matter of law by failing to give substantial weight to Plaintiff's disability rating from the Department of Veterans Affairs ("VA") as required by the Fourth Circuit's ruling in *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337 (4th Cir. 2012).  Pl.'s Mot. 19.  Commissioner counters that the ALJ did apply the correct legal standard as the requirement in *Bird* was superseded by a later amendment to the Agency's rules regarding how ALJs should evaluate medical evidence that—according to Commissioner—applies to all decisions issued after March 27, 2017.  Comm'r's Mot. 10-11.  For the reasons articulated below, the Court agrees with Plaintiff.

Contrary to Commissioner's assertion, the Revisions to Rules Regarding the Evaluation of Medical Evidence only applies to disability claims *filed* on or after March 27, 2017.  82 Fed. Reg. 5844 (Jan. 18, 2017) ("These final rules are effective on March 27, 2017."); 20 C.F.R. § 404.1504 ("Therefore, in claims filed . . . on or after March 27, 2017, we will not provide any analysis in our determination or decision about a decision made by any other governmental agency or a nongovernmental entity about whether you are disabled, blind, employable, or

entitled to any benefits."). As Plaintiff filed this claim for DIB on November 8, 2013, the Fourth Circuit's ruling in *Bird* remains the controlling law on the issue.

In *Bird*, the Fourth Circuit held that "in making a disability determination, the SSA must give substantial weight to a VA disability rating." *Bird*, 699 F. 3d. at 343. However, the Fourth Circuit held that an ALJ may assign less weight where the record "clearly demonstrates that such a deviation is appropriate." *Id.*; *see also Green v. Berryhill*, No. CV TMD 15-3467, 2017 WL 1048155, at *9 (D. Md. Mar. 20, 2017) (noting that "the ALJ gave several reasons for discounting the weight given to the VA disability rating"). This was the result of the Fourth Circuit's acknowledgement that variations exist between each administrative agency's determination of disability as each "employs its own standards for evaluating a claimant's alleged disability" and "the effective date of coverage for a claimant's disability under the two programs likely will vary." *Bird*, 699 F. 3d. at 343.

Since *Bird*, it is clear an ALJ cannot disregard a VA disability rating. *See, e.g.*, *Lamb v. Comm'r, Soc. Sec.*, No. Civ. GLR-14-0886, 2014 WL 5704905, at *2 (D. Md. Nov. 4, 2014). Further, an ALJ cannot simply state that the record supports his assertions; he must "provide 'persuasive, specific and valid reasons' for giving less weight to the VA's disability rating that are supported by the record." *Mims v. Berryhill*, No. CV TMD 16-2813, 2017 WL 3704615, at *8 (D. Md. Aug. 28, 2017) (quoting *McCartey v. Massanari*, 298 F.3d 1072, 1076 [9th Cir. 2002]). *See, e.g.*, *Griffin v. Comm'r, Soc. Sec. Admin.*, No. Civ. SAG-16-274, 2017 WL 432678, at *3 (D. Md. Jan. 31, 2017) (finding an ALJ "adequately explained" why he assigned "little weight" to a VA disability rating of 70 percent where he noted "[the claimant] performed substantial gainful employment for several years despite that rating, and was able to apply for and obtain new positions" and holding there was no violation of *Bird*).

Here, the ALJ failed to acknowledge the responsibility imposed upon him by the Fourth Circuit. The entirety of the ALJ's discussion concerning the VA documents Plaintiff submitted—including the disability rating of 90 percent—is as follows:

> I have considered all relevant and available VA evidence, including the claimant's VA compensation and rating of 90 percent disability. I give little weight to the VA disability rating, as the standards utilized for other types of disability claims differ from the standards imposed by Social Security statues, regulations, and rules.

R. 22-23 (internal citations omitted). This explanation fails to meet the requirements of *Bird*. The ALJ's reasoning that he assigned little weight because the standards are different for each agency is not a "persuasive, specific or valid reason" supported by evidence in the record. *See Bird*, 699 F. 3d. at 343. The ALJ requirement that assigning anything less than substantial weight must be supported by evidence in the record that "clearly demonstrates that such a deviation is appropriate." *Id.* Absent additional information explaining his reasoning—including citations to specific evidence in the record—the Court is left to assume the ALJ arbitrarily assigned little weight to the VA disability rating, in contravention with the requirements of the Fourth Circuit. Accordingly, upon remand the ALJ is instructed to afford Plaintiff's VA disability rating substantial weight or "provide 'persuasive, specific and valid reasons' for giving less weight . . . that are supported by the record." *Mims*, No. Civ. TMD-16-2813, 2017 WL 3704615, at *8.

### B. *The ALJ's Assessment of Medical Opinions*

Plaintiff raises two arguments relating to the ALJ's evaluation of medical opinions in evidence. Specifically, Plaintiff argues that the ALJ: 1) misattributed a medical opinion to the wrong source and 2) failed to assign the proper weight to another treating source opinion. Plaintiff argues these both constitute reversible error.

According to the regulations, an ALJ is "required to 'evaluate every medical opinion' presented to him, '[r]egardless of its source.'" *Brown v. Comm'r of Soc. Sec.*, 873 F.3d. 251, 271 (4th Cir. 2017) (citing 20 C.F.R. § 404.1527[c]). Generally, a treating physician's opinion is accorded controlling weight. *Chestnut v. Berryhill*, Civ. No. GLS-17-1696, 2018 WL 4565540, at *4 (D. Md. Sept. 24, 2018) (citing 20 C.F.R. § 404.1527[c][2]); *see also Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005) ("Courts often accord 'greater weight to the testimony of a treating physician' because the treating physician has necessarily examined the applicant and has a treatment relationship with the applicant."). If the ALJ finds the treating source's opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record," it must be given "controlling weight." 20 C.F.R. § 404.1527(c)(2). However, an ALJ "may choose to give less weight to the testimony of a treating physician if there is persuasive contrary evidence." *Bishop v. Comm'r of Soc. Sec.*, 583 F. App'x 65, 67 (4th Cir. 2014) (quoting *Hunter v. Sullivan*, 993 F.2d 31, 35 [4th Cir.1992]). If the treating-source's opinion is not given controlling weight, the ALJ will apply specific factors when assessing what weight to assign. *Id.*

> Courts evaluate and weigh medical opinions pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist.

*Johnson*, 434 F.3d at 654 (citing 20 C.F.R. § 404.1527). While an ALJ is not required to analyze each factor, "[t]he regulation promises that the ALJ 'will always give good reasons in [his] decision for the weight [he gives] your treating source's medical opinion.'" *Brown*, 873 F.3d at 256; *see, e.g.*, *Bishop*, 583 F. App'x at 67 (listing cases) (holding the ALJ was permitted to reject a treating physician's opinion even though he "did not explicitly analyze each of the factors on

9

the record, [because] the ALJ was clear that he concluded that the doctor's opinion was not consistent with the record or supported by the medical evidence, which are appropriate reasons" under the regulations).

### 1. The ALJ erred by misattributing Dr. Shabash's medical opinion to Dr. Glanville.

Plaintiff argues the ALJ improperly attributed Dr. Elena Shabash's opinion evidence to Dr. Stephanie Glanville and that as a result it was not "properly evaluated . . . pursuant to 20 C.F.R. 404.1527." Pl.'s Mot. 10-11. In light of this error, Plaintiff asserts that the ALJ's decision "cannot be supported by substantial evidence" and that remand is required. *Id.* For the reasons articulated below, the Court agrees that remand is necessary on the basis of this claim.

It is clear from the record the ALJ misattributed the report in question to the incorrect source. In his discussion, the ALJ credits Dr. Glanville as the sole author of two exhibits in evidence: Exhibit 8F (R. 359-66) and Exhibit 9F (R. 367-69). The accompanying index also attributes these two exhibits solely to Dr. Glanville. However, Exhibit 8F actually contains mental RFC assessments from two separate treating physicians: Dr. Shabash provided the assessment beginning at R. 359 while Dr. Glanville provided the assessment beginning at R. 363. Additionally, the ALJ erroneously states that Dr. Glanville opined Petitioner was "not capable of competitive employment at the present time." R. 22. In fact, this is a statement directly from Dr. Shabash's mental RFC assessment. R. 362. While the statement is a legal conclusion reserved to the Commissioner regardless of its source, this Court is persuaded that the ALJ erred in his overall assessment of Dr. Shabash's opinion. Specifically, as a licensed psychiatrist, Dr. Shabash is an acceptable medical source. *See Brown*, 873 F.3d at 255 (citing 20 C.F.R. § 404.1502(a)) ("For purposes of the regulation, an 'acceptable medical source' includes a licensed physician or psychologist."). Further, the misattributed report states that Dr. Shabash was

treating Plaintiff on a monthly basis since May 22, 2013 until at least the date of the assessment, February 28, 2014. R. 359. This indicates she is a "treating source" for purposes of assessing her medical opinion. *Id.* at 255-56 (citing 20 C.F.R. § 1527(a)(2)) ("The regulation defines a 'treating source' as 'your own acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you.'"). Despite this, ALJ afforded Dr. Shabash's opinion "no weight" as she did not "provide specific work-related restrictions, and a finding of disability is an issue reserved to the Commissioner." R. 22. However, the record indicates that the ALJ was only considering Dr. Shabash's "multiple letters . . . recommend[ing] time off work" when he made this determination. R. 22. As the misattributed report specifically dealt with Plaintiff's mental RFC and opined that Plaintiff had between marked or extreme limitations in various work-related functions, it cannot be said that the ALJ's reasons for declining to assign controlling weight are "good" reasons when it is clear he was not properly considering the evidence. Further, it is impossible for the Court to ascertain whether this report would sway the ALJ's determination on Petitioner's disability status without engaging in impermissible reweighing of the evidence. Accordingly, this matter should be remanded with specific instructions for the ALJ to properly consider all of the opinion evidence authored by Dr. Shabash.

> **2. In light of the misattribution of Dr. Shabash's opinion evidence, the Court cannot determine whether the ALJ assigned the proper weight to Dr. Glanville's opinion.**

Plaintiff argues the ALJ failed to assign "controlling weight" to the opinion of Dr. Stephanie Glanville, Plaintiff's treating psychiatrist. Pl.'s Mot. 12. Plaintiff asserts that the opinion was well-supported by the record evidence and that "unless the ALJ identifie[d] substantial inconsistent evidence," he was required to assign the opinion controlling weight. *Id.*

11

For the reasons articulated below, the Court agrees that remand is necessary on the basis of this claim.

Here, despite Dr. Glanville's status as Plaintiff's treating psychiatrist, the ALJ afforded her opinion only "some weight" in his assessment. R. 22. In support of this determination, the ALJ noted how Dr. Glanville's "evaluation findings do not support the assessment of any marked or extreme limitations. Additional mental status exams recorded by Dr. Glanville are essentially within normal limits." R. 22 (internal record citations omitted). While not a complete review of the factors enumerated in the regulations, lack of support by a physician's own examination records is an acceptable reason for not assigning controlling weight. *See, e.g., Bishop*, 583 F. App'x at 67 (affirming the ALJ's decision to not afford a treating physician's opinion controlling weight because "the ALJ was clear that he concluded that the doctor's opinion was not consistent with the record or supported by the medical evidence, which are appropriate reasons under *Johnson*"). Further, it is not the role of the Court to reweigh evidence presented in the record; rather, the Court reviews decisions for substantial evidence. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). However, a corroborating opinion might have a profound effect on an ALJ's determination of how much weight to assign to medical opinions. *See Johnson*, 434 F.3d at 654 (citing 20 C.F.R. § 404.1527) (listing the factors for assessing opinion as including "the supportability of the physician's opinion," and "the consistency of the opinion with the record"). It is the responsibility of the ALJ to make findings of fact and resolve evidentiary conflicts. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (citations omitted). Given the fact the report by Dr. Shabash was misattributed to Dr. Glanville, the Court orders that upon remand the ALJ reassess the weight he accorded to Dr. Glanville's opinion evidence in light of the existence of two (2) separately authored mental RFC assessments.

## C. Residual Functional Capacity

Plaintiff raises two *Mascio*-type arguments concerning the ALJ's RFC assessment. First, Plaintiff argues that the RFC fails to account for his moderate difficulties with concentration, persistence, or pace. Second, Plaintiff argues that the ALJ failed to include sufficient limitations in the RFC assessment for Plaintiff's moderate difficulties in social functioning.

1. **The RFC assessment contains sufficient corresponding limitations to meet the *Mascio* requirements for Plaintiff's moderate difficulties in maintaining concentration, persistence, or pace**.

Plaintiff argues the limitation to "simple, unskilled tasks" does not sufficiently account for the ALJ's own findings that Plaintiff has moderate difficulties in concentration, persistence and pace. Pl.'s Mot. 17-18. Plaintiff asserts that the evidence indicates the ALJ should have included "a limitation regarding her inability to stay on task." Pl.'s Mot. 19. Commissioner counters that the ALJ did in fact include additional limitations in his RFC assessment that complied with the requirements of *Mascio*. Comm'r's Mot. 9-10. For the reasons that follow, this Court agrees with Commissioner's argument.

In *Mascio*, the Fourth Circuit held that an RFC assessment must account for the ALJ's step three finding of moderate limitations in concentration, persistence, or pace beyond limiting a claimant to performing only "simple, routine tasks." *Mascio v. Colvin,* 780 F.3d 632, 638 (4th Cir. 2015). This Court further clarified that, "[p]ursuant to *Mascio*, once an ALJ has made a step three finding that a claimant suffers from moderate difficulties in concentration, persistence, or pace, the ALJ must either include a corresponding limitation in her RFC assessment, or explain why no such limitation is necessary." *Talmo v. Comm'r, Soc. Sec.,* Civ. No. ELH-14-2214, 2015 WL 2395108, at *3 (D. Md. May 19, 2015). In performing this assessment, an ALJ "must include a narrative discussion describing how the evidence supports each conclusion, citing

specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Mascio*, 780 F.3d at 636 (quoting SSR 96–8p, 61 Fed. Reg. at 34,478) (internal quotation marks omitted). "In other words, the ALJ must both identify evidence that supports his conclusion and 'build an accurate and logical bridge from [that] evidence to his conclusion.'" *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018) (quoting *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (citation omitted)).

The functional area of concentration, persistence, or pace, "refers to the abilities to focus attention on work activities and stay on task at a sustained rate." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(E)(3). Since *Mascio*, courts have reviewed various ALJs' attempts to include corresponding limitations in their RFC assessments for moderate limitations in this functional area. *See, e.g.*, *Wilson v. Comm'r, Soc. Sec. Admin.*, Civ. No. ADC-17-2666, 2018 WL 3941946, at *5 (D. Md. Aug. 16, 2018) (holding limitations for interactions with other individuals does not address concentration, persistence or pace, rather it addresses social functioning); *McDonald v. Comm'r*, Civ. No. SAG-16-3041, 2017 WL 3037554, at *4 (D. Md. July 18, 2017) (concluding "a RFC restriction that [the claimant could] perform 'simple, routine, and repetitive tasks involving only simple work-related decisions with few if any workplace changes and only occasional supervision' " was insufficient to meet *Mascio* requirements); *Steele v. Comm'r, Soc. Sec.*, Civ. No. MJG-15-1725, 2016 WL 1427014, at *4 (D. Md. Apr. 11, 2016) (citing SSR 96-9P) (holding durational limitations must consider that the normal 8-hour workday already includes breaks approximately every two [2] hours and provide further explanation as to how that restriction "adequately accounts for a moderate limitation in the ability to stay on task" or else it does not meet the *Mascio* requirements); *Henig v. Colvin*, Civ. No. TMD-13-1623, 2015 WL 5081619, at *12 (D. Md. Aug. 26, 2015) (listing cases) (finding the ALJ's determination that

a claimant should be excluded from "work involving significant stress, such as production-line type work" sufficient to meet *Mascio* requirements for corresponding limitations for moderate difficulties in concentration, persistence or pace).

Here, the ALJ found that Plaintiff suffered from moderate difficulties in concentration, persistence, or pace. R. 17. Contrary to Plaintiff's assertion, the limitation to "simple, unskilled tasks" was not the "only mental limitation" the ALJ included in the RFC assessment. Pl.'s Mot. 17. The RFC assessment goes on to include limitations to tasks "with no fast pace or strict production requirements." R. 17. As this limitation directly addresses the ability "to focus attention on work activities and stay on task at a sustained rate," it meets the *Mascio* requirements for a corresponding limitation for a finding of moderate difficulties. *See Henig*, Civ. No. TMD 13-1623, 2015 WL 5081619, at *12. Accordingly, remand is not necessary on the basis of this claim.

**2. The RFC assessment contains sufficient corresponding limitations to meet the *Mascio* requirements for Plaintiff's moderate difficulties in social functioning.**

Plaintiff argues his RFC assessment should have included specific limitations for interactions with the supervisors as the ALJ determined she had moderate difficulties in social functioning. Pl.'s Mo. 15-17.

"[S]ome district courts within the Fourth Circuit have extended the holding in *Mascio* to require an ALJ to either include restrictions in the RFC arising out of those mild limitations [for different functional areas] or justify the omission of such restrictions." *Adams v. Colvin*, No. 1:15CV00673, 2016 WL 4007608, at *7 (M.D.N.C. July 26, 2016), report and recommendation adopted, No. 1:15CV673, 2016 WL 6651324 (M.D.N.C. Nov. 10, 2016) (citing cases); *see, e.g.*, *Russell v. Colvin*, No. 1:14-CV-00203-MR-DLH, 2015 WL 3766228, at *4 (W.D.N.C. June 16,

2015) ("Although the ALJ's findings at step two and three may not require an RFC that imposes limitations on social functioning, the ALJ must at least provide a sufficient explanation in the decision to allow this Court to determine why no limitations as to social functioning were included in the RFC despite the ALJ's finding that Plaintiff has moderate difficulties in social functioning."). When Courts in this District have extended *Mascio* requirements to the functional area of social functioning, they have limited it to situations where an ALJ made a finding of at least moderate difficulties in social functioning. *See, e.g.*, *Shryock v. Comm'r*, No. SAG-15-1136, 2016 WL 245531, at *2 n.3 (D. Md. Jan. 21, 2016) ("I further note that the ALJ also found a moderate limitation in the area of social functioning, but imposed no corresponding limitation in the RFC assessment. Because this appears to be a *Mascio*-like error in a different functional area, the ALJ should further address this issue on remand."); *McMahon v. Colvin*, No. Civ. A. TMD-12-00432, 2013 WL 5939146, at *3 (D. Md. Nov. 4, 2013) (holding that an RFC assessment "adequately captures all of [a claimant's] limitations despite finding moderate limitations in social functioning" as a review of the ALJ's discussion of the evidence supports the lack of specific limitations addressing social functioning). It is not required that a corresponding RFC restriction specifically address interactions with each category of individuals—coworkers, supervisors, and the public. *See, e.g.*, *Lommel v. Colvin*, No. Civ. TMD-15-2006, 2016 WL 4395897, at *8 (D. Md. Aug. 18, 2016) (noting how "the ALJ's inclusion of a limitation in the assessment of Plaintiff's RFC and in the hypothetical questions to the [vocational expert] to only occasional contact with co-workers or supervisors accounts for Plaintiff's moderate difficulties in social functioning . . . ."). However, the burden is on the ALJ to make findings of fact and resolve evidentiary conflicts. *Hays*, 907 F.2d, at 1456 (citations omitted). An ALJ must do so by providing a narrative explanation with citations to evidence to

16

support it. *Mascio*, 780 F.3d at 636 (quoting SSR 96–8p, 61 Fed. Reg. at 34,478) (internal quotation marks omitted). The ALJ must build an accurate and logical bridge from that evidence to his conclusion. *Monroe*, 826 F.3d at 189.

Here, the ALJ found Plaintiff has a "moderate limitation" with "interacting with others." R. 16. This finding necessitates the ALJ include either a corresponding limitation in the RFC assessment or an explanation as to why one was not necessary. *See Shryock*, No. SAG-15-1136, 2016 WL 245531, at *2 n.3. In this case, the ALJ included limitations to "occasional interaction with co-workers and the public" but nothing specifically about interactions with supervisors. R. 17. In the subsequent discussion, the ALJ explained that he had "considered [Plaintiff's] history of PTSD and reported difficulty managing stress and difficulty with social interactions in limiting her to work involving . . . occasional interaction with co-workers and the public." R. 21. The ALJ also noted that Plaintiff's "PTSD symptoms were triggered by hostile interactions with a work supervisor, and symptoms improved after she left work and began taking her medications regularly." R. 21. While it is not necessary for an RFC to address interactions with supervisors, the ALJ's explanation fails to resolve the conflicting evidence concerning why this hostile interaction with a supervisor should not translate into limitations with how Plaintiff interacts with future supervisors. A review of the record indicates these interactions were limited to a single supervisor. *See* R. 323 (reporting that Plaintiff had "a hostile verbal altercation with her supervisor"); R. 357 (describing in more detail the ongoing issues with Plaintiff's supervisor). However, the record also contains evidence suggesting that Plaintiff's reaction to her supervisor may have something to do with a prior traumatic experience she endured while serving in the U.S. Army. *See* R. 334 (noting that "it is conceivable" the prior trauma perpetrated by Plaintiff's commanding officer "aggravated the severity of [Plaintiff's] current emotional reaction" to her

supervisor's behavior).  As it is currently articulated, the ALJ's decision does not resolve this potentially conflicting evidence and it is not the Court's role to do so.  *Hays*, 907 F.2d, at 1456 (citations omitted).  Accordingly, upon remand the ALJ is directed to specifically address the question of whether Plaintiff needs limitations in her interactions with supervisors or provide an explanation for why that is not necessary, including citing to specific evidence in the record.

## IV. Conclusion

Based on the foregoing, the Court **REVERSES** and **REMANDS** this matter with specific instructions for the ALJ as outlined in the foregoing opinion.  In making this decision, the Court offers no opinion on the ALJ's ultimate determination that Plaintiff is not disabled within the meaning of the Social Security Law.

November 29, 2018 /s/
Charles B. Day
United States Magistrate Judge

CBD/clc